OPINION OF THE COURT
SCIRICA, Circuit Judge.
In this appeal we must determine whether the Commonwealth of Pennsylvania violated the automatic stay in a Chapter 11 bankruptcy proceeding, 11 U.S.C. § 362 (1982), by conducting a sales tax audit and issuing a notice of audit assessment to the debtor, H & H Beverage Distributors, Inc. (“H & H”). The district court affirmed the bankruptcy court and concluded that both the audit and the notice violated the automatic stay’s prohibition against “any act to create, perfect, or enforce” a lien, see §§ 362(a)(4), (a)(5), because the acts constituted “the statutory prerequisites to the creation of a lien under the Pennsylvania Tax Code_” H & H Beverage Distrib., Inc. v. Department of Revenue of Pennsylvania, 79 B.R. 205, 207 (E.D.Pa.1987).
Our review is plenary, In re Remington Rand Corp., 836 F.2d 825, 828 (3d Cir.1988), and for reasons that follow, we will reverse. We hold that the Commonwealth was entitled to audit H & H to ascertain the extent of any claim it may have. Moreover, although issuance of a notice of audit assessment was a step toward the creation of a lien, it was expressly permitted under § 362(b)(9), which provides that issuance by a governmental unit of a notice of tax *166 deficiency is not subject to the automatic stay.
I.
H & H filed a voluntary petition on January 20,1984, under Chapter 11 of the Bankruptcy Reform Act of 1978 (“the Code”), 11 U.S.C. § 1101 et seq., and was granted debtor-in-possession status. The Commonwealth received notice of the Chapter 11 filing and in August, 1984, undertook a sales tax audit for the period from January I, 1981 to July 30, 1984. Upon completing the audit on August 27,1984, the Commonwealth sent H & H a “notice of audit assessment,” which read:
Final Assessment
A certificate of lien will be filed with the prothonotary of your county, unless this assessment is paid or a notice of intent to appeal is filed with the board of appeals within thirty (30) days of the assessment mailing date....
J.A. at 5. The notice stated that H & H owed $162,981.16 in unpaid sales tax.
H & H initiated the administrative appeal process in an effort to obtain a redetermi-nation of the audit findings. Its state appeal is pending in the Pennsylvania Commonwealth Court. In addition, H & H filed a complaint on January 16, 1986 in the United States Bankruptcy Court, seeking to set aside the sales tax assessment, or in the alternative to have the bankruptcy court determine H & H’s tax liability.
The bankruptcy court ruled that the audit and the assessment of tax liability against H & H violated the automatic stay under § 362(a). Moreover, the court concluded, because the violations were made with knowledge of the bankruptcy petition, H & H was entitled to attorneys’ fees and costs. Accordingly, the bankruptcy court declared the assessment null and void and held that any lien arising from the assessment must be stricken. The district court affirmed, reasoning that the audit, assessment, and notice were prerequisites to the creation of a lien, and under Pennsylvania law, a “lien would be automatically created absent action by the debtor.” Therefore, the district court held, the Commonwealth willfully violated the automatic stay.
II.
An automatic stay under § 362 of the Code “is one of the fundamental debtor protections provided by the bankruptcy laws.” H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), reprinted in 1978 U.S. Code Cong. & Admin.News 5787, 6296. Its essential purpose is twofold: (1) to protect creditors and thereby promote the bankruptcy goal of equal treatment, Hunt v. Bankers Trust Co., 799 F.2d 1060, 1069 (5th Cir.1986); and (2) to give the debtor a breathing spell. H.R.Rep. No. 595, at 340.
[The automatic stay] stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.
Id.; S.Rep. No. 989, 95th Cong., 2d Sess. 50 (1978); see generally 2 Collier on Bankruptcy § 362.04, at 362-31 (L. King ed. 1988).
In order to examine the issue of tax liability when a stay has been issued, we turn to § 362(a), which prohibits:
(4) any act to create, perfect, or enforce any lien against property of the estate;
(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; ....
Id.; see also S.Rep. No. 989, at 50 (1978) (“To permit lien creation after bankruptcy would give certain creditors preferential treatment_”). Despite § 362(a)’s broad prohibitions, the Code provides that a Chapter 11 filing “does not operate as a stay ... of the issuance to the debtor by a governmental unit of a notice of tax deficiency.” Id. § 362(b)(9). Moreover, pursuant to § 505 of the Code, the bankruptcy court is empowered under certain circumstances— *167 notwithstanding § 362 — to determine the amount or legality of a tax “whether or not previously assessed, whether or not paid, and whether or not contested....” Id. § 505(a)(1), (c). When the bankruptcy court makes this determination, the governmental unit charged with collecting the tax may then assess the tax against the debtor. Thus, once a bankruptcy proceeding is instituted, and a § 362(b)(9) notice of tax deficiency has been issued for prepetition taxes, the bankruptcy court has the option of referring the tax issue to the Tax Court or making its own determination.
The parties’ positions in this matter are straightforward. H & H contends that the Commonwealth willfully violated the automatic stay’s prohibition of any act to create a lien. The Commonwealth maintains that it must conduct an audit before filing a proof of claim, and before it can notify a debtor of any deficiency. It also contends that its notice of audit assessment is expressly permitted under § 362(b)(9).
The bankruptcy court determined that the act of auditing was a per se violation of the automatic stay; the district court affirmed on different grounds, concluding that the audit violated the stay because it was followed by a tax assessment and the issuance of a tax assessment notice to the taxpayer. Under either theory, the district court’s judgment must be reversed.
III.
Auditing a debtor’s sales tax records does not by itself constitute an act to create a lien or collect a claim. The Commonwealth, like any other creditor, is entitled to determine whether it possesses a valid claim against the debtor. Cf. In re Remington Rand, 836 F.2d at 827, 832 (government audit of Chapter 11 debtor’s records to determine whether it had a right to payment for breach of contract). In many cases, prohibiting a tax audit would prevent the Commonwealth from filing a proof of claim. See 124 Cong.Rec. H11110 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards explaining House amendments to Code) (“Where no proceeding in the Tax Court is pending at the commencement of the bankruptcy case, the tax authority can ... file a claim against the estate for a prepetition tax liability....”); accord Bankr.R. 3001.[1] In addition, it would prevent governmental units from determining whether a tax deficiency exists, and thereby render meaningless § 362(b)(9), which expressly permits taxing entities to issue notices of tax deficiency.
IV.
H & H contends that even if the automatic stay does not bar the audit, the district court correctly concluded that issuance of the notice of audit assessment was void because it would automatically result in imposition of a lien in favor of the Commonwealth.
As we have noted, § 362(b)(9) of the Code provides that the automatic stay does not bar a governmental entity from issuing a “notice of tax deficiency.” Thus, although a governmental unit may not collect taxes or create a lien during the stay, it may notify a debtor of a tax deficiency. This provision, which applies to governmental units, was based on the workings and terminology of the federal taxing scheme. See In re Hardy, 39 B.R. 64, 66 (Bankr.E. D.Pa.1984) (Internal Revenue Service (“IRS”) notice of tax deficiency does not violate the automatic stay).
Congress exempted the notice of tax deficiency from the automatic stay to “permit the debtor to take his personal tax case to the Tax Court, if the bankruptcy judge authorizes him to do so (as explained more fully in the discussion of section 505.)” *168 124 Cong.Rec. H11110 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards); see also In re Community Hosp. of Rockland County, 15 B.R. 785, 790 (Bankr.S.D.N.Y. 1981); 1 W. Norton, Norton Bankruptcy Law and Practice § 20.21 & n. 2 (1981) (notice of tax deficiency is “condition precedent” to debtor’s application to proceed in Tax Court should automatic stay be set aside); cf. H.R.Rep. No. 96-833, 96th Cong., 2d Sess. 43 & nn. 3, 4 (1980) (bill amending Internal Revenue Code to provide for tax treatment in bankruptcy — if a deficiency notice has been issued, bankruptcy court may lift automatic stay in case involving corporate debtor and permit tax issue to be determined in Tax Court). Thus, once a deficiency notice has been issued, a debtor’s tax liability can be resolved in one of two ways:
In essence ... the bankruptcy judge will have authority to determine which court will determine the merits of the tax claim both as to claims against the estate and claims against the debtor concerning his personal liability for nondischargeable taxes. Thus, if the Internal Revenue Service, or a State or local tax authority files a petition to determine discharge-ability, the bankruptcy judge can either rule on the merits of the claim and continue the stay on any pending Tax Court proceeding or lift the stay on the Tax Court and hold the dischargeability complaint in abeyance.
124 Cong.Rec. at 11111 (remarks of Rep. Edwards).[2]
Because the § 362(b)(9) exemption cited by the Commonwealth has its origins in the federal tax system, we must compare the federal taxing procedure with analogous provisions in Pennsylvania law. Although § 362(b)(9) uses the term “notice of tax deficiency,” the provision applies to any governmental unit. Based on the statutory language and legislative history, we conclude that the Code contemplated that all governmental taxing entities should receive equal treatment under § 362. Therefore, because the Commonwealth does not label its notice a “tax deficiency” notice, we must examine the effect of a federal, i.e., an IRS, “notice of tax deficiency,” and then compare Pennsylvania’s equivalent notice provision.
The effect of an IRS notice is based on the agency’s statutory authority to “make inquiries, determinations, and assessments” of all unpaid taxes, 26 U.S.C. § 6201. If the IRS finds a tax deficiency, it must issue a formal “notice of tax deficiency.” Id. § 6212. Within ninety days of receiving the IRS notice, the taxpayer may file a petition with the Tax Court for rede-termination. Id. § 6213(a).[3] If the taxpayer does not appeal for a redetermination “the deficiency shall be assessed, and shall be paid upon notice and demand from the Secretary.” Id. § 6213(c). An assessment involves formally recording the taxpayer’s liability in the office of the Secretary. Id. § 6203. If the tax is assessed and not paid on demand “the amount ... shall be a lien in favor the United States.” Id. § 6321.
Thus, the IRS cannot obtain a lien until it has issued a notice of tax deficiency. Wallin v. Commissioner of Internal Revenue, 744 F.2d 674, 676 (9th Cir.1984); United *169 States v. Zoila, 724 F.2d 808, 810 (9th Cir.), cert. denied, 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 59 (1984). It can calculate the amount of unpaid taxes, and it can notify the taxpayer of the total deficiency, but it cannot formally assess tax liability and create a lien. “By filing a petition for reorganization, a debtor obtains a stay of pending and future litigation, including assessment of federal tax liabilities.” In re Ribs-R-Us, Inc., 828 F.2d 199, 203 (3d Cir.1987).
Pennsylvania follows a similar procedure for collecting delinquent taxes. Like the IRS, the Commonwealth is authorized “to make inquiries, determinations and assessments” of taxes due. 72 Pa. Cons.Stat. Ann. § 7230 (Purdon Supp.1988). When a taxpayer has not filed a return, understated his tax, or underpayed his tax, “[a] notice of assessment in the estimated amount shall be sent to the taxpayer.” Id. § 7231(c). Within thirty days of receiving notice, the taxpayer is required to either pay the deficiency or begin the appellate process by petitioning the Commonwealth for reassessment. Id. §§ 7231, 7232. If the taxpayer is deemed liable for the tax deficiency and “neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the Commonwealth ... only after same has been entered and docketed of record by the pro-thonotary_” Id. § 7242(a).[4]
Although Pennsylvania labels its provision a “notice of audit assessment,” the effect and purpose of the notice is identical to an IRS “notice of tax deficiency.” [5] In both cases, the notice is statutorily required and commences the process by which the taxpayer either pays the govem-merit’s estimate of the tax due or appeals for redetermination. Indeed, the notice in this case specifically alerted H & H that “[a] certificate of lien will be filed with the prothonotary of your county unless this assessment is paid or a notice of intent to appeal is filed ... within thirty (30) days_” J.A. at 5. More importantly, issuance of the notice was not tantamount to the creation of a lien. First, H & H was in the midst of its administrative appeal in the state court system, and the Commonwealth cannot obtain a lien until the appeal is resolved. Second, no lien is created under Pennsylvania law until the Commonwealth demands the amount, interest, penalty and cost, and the taxpayer neglects or refuses to pay.
Thus, the Commonwealth could not create a lien until it made a formal demand for the full amount due upon completion of the appeal and then filed the amount of that liability with the prothonotary. Pursuant to § 362(a), these are the acts that would violate the bankruptcy stay. Therefore, the Commonwealth’s notice of audit assessment is the functional equivalent of the notice of tax deficiency, and pursuant to § 362(b)(9), it is expressly permitted during the pendency of an automatic stay. No lien could be created until the Commonwealth filed the amount of liability with the prothonotary. Accordingly, we hold that the Commonwealth does not violate the automatic stay by auditing a debtor, i.e., calculating its claim, and then issuing a notice of audit assessment. Because the state and federal notices have the same effect, there is no reason to permit the federal *170 notice pursuant to § 362(b)(9), yet bar the equivalent state notice.
Once the notice is issued, however, the Commonwealth is barred from taking steps to create a lien.[6] The method of calculating and determining tax liability — at least at that point — is a task reserved for the bankruptcy court. See § 505. Indeed, the Commonwealth’s audit provides the bankruptcy court with a starting point for determining final tax liability and upon issuance of a deficiency notice (or notice of audit assessment) under § 362(b)(9), the Code gives the court the option of allowing the debtor to pursue an administrative appeal.
Accordingly, we will reverse the judgment of the district court, except insofar as it voids the tax lien created by the Commonwealth with the prothonotary of the Court of Common Pleas, with directions to remand the case to the bankruptcy court for further proceedings consistent with this opinion.[7]

. The Commonwealth does not contend that it should be exempt from proof of claim filing requirements that generally apply in bankruptcy proceedings. Indeed, governmental entities that fail to file a proof of claim usually do so at their peril. See In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co., 830 F.2d 758, 765 & n. 8 (7th Cir.1987) (government’s claim for tax penalty disallowed because it failed to file proof of claim); In re Connecticut Motor Lines, Inc., 336 F.2d 96, 107 (3d Cir.1964) (government must file proof of claim for unpaid taxes); see also In re Ribs-R-Us, Inc., 828 F.2d 199, 199 (3d Cir.1987) (government filed proof of claim for back taxes after debtor filed for Chapter 11 reorganization).

. Based on this reasoning, we question whether H & H may pursue its state administrative tax remedies during the pendency of the automatic stay without permission of the bankruptcy court. By filing its administrative appeal, H & H apparently attempted to comply with the time limitations imposed under Pennsylvania tax law. Under federal law, of course, the time prescribed for filing a petition for review in the Tax Court is suspended during the period in which an automatic stay bars the debtor from filing a tax appeal. See 26 U.S.C. § 6213(f)(1). On remand, the bankruptcy court must decide whether to lift the stay to allow completion of H & H’s state appeal.

. Under the pre-Code procedure, the government could — under certain circumstances — immediately assess a Chapter 11 debtor's tax liability without regard to the notice requirements of 26 U.S.C. § 6213(a). See id. § 6871. Thus, a debtor would never receive a notice of tax deficiency and therefore, would never be able to resort to the Tax Court.
Although the Code did not expressly repeal § 6871, the drafters of the Code believed that § 6871 was "effectively repealed” by the automatic stay provisions. See 2 W. Norton, Norton Bankruptcy Law & Practice § 44.05 & n. 6 (1981). Otherwise, the Code’s allowance of a notice of tax deficiency would be a meaningless gesture.

. In the context of a sales tax, Pennsylvania does not require issuance of a judicial writ of scire facias before creation of a lien. Id. § 7242(b).

. One of the problems in this case stems from Pennsylvania's use of the word "assessment” in its notice form. Under federal law, an assessment is a formal act of officially recording liability in the office of the Secretary. See discussion supra. A federal tax assessment officially records the "fact and amount of liability ... with consequences somewhat similar to the reduction of a claim to judgment." Cohen v. Gross, 316 F.2d 521, 522-23 (3d Cir.1963); accord United States v. Latham, 754 F.2d 747, 750 (7th Cir.1985). It occurs after issuance of a notice of deficiency, in which the taxpayer has been given the option to appeal or pay the tax. Cohen, 316 F.2d at 522.
Under Pennsylvania law, however, the term is used to designate the Commonwealth’s calculation of tax deficiency. It is made before a taxpayer receives any form of notice and is therefore not an official act that results in tax liability; Le., it is not a formal step that must be taken after the taxpayer has been notified of a deficiency and has either: (1) neglected to pay the tax; or (2) declined to file an administrative appeal.

. H & H contends that the Commonwealth further violated the bankruptcy court’s order by filing a lien certificate with the prothonotary of the Court of Common Pleas of Philadelphia County on January 16, 1987 (after the bankruptcy court’s judgment was entered) for $188,-597.55. The Commonwealth maintains that the lien was filed when H & H failed to post a security bond when it petitioned for appellate review. See Pa.R.App.P. 1782 (bond for 120 percent of tax and penalty due must be filed with prothonotary of the Commonwealth Court by party seeking review of an order of the Board of Finance and Revenue in a tax matter). The fact that the Commonwealth filed its lien with the prothonotary of the Court of Common Pleas, rather than with the prothonotary of the Commonwealth Court, as required by Pa.R. App.P. 1782, lends support to H & H’s position that the January 16, 1987 lien was a tax lien. See 72 Pa. Cons.Stat.Ann. § 7242(a) (tax lien must be filed with county prothonotary).
Whatever the merits of the Commonwealth's assertion that H & H failed to file an appeal bond, the issue was not raised before the bankruptcy court or the district court, and we are not presented with that issue on appeal. Moreover, the creation of any lien, regardless of the its purpose, is barred by § 362. Thus, to the extent the Commonwealth has created a lien in this case, it is void.

. Because we hold that the Commonwealth did not violate the automatic stay, we will also reverse the district court's award of costs and attorneys’ fees for the Commonwealth's alleged willful violation of the stay.